Good morning, Your Honor. I'd like to reserve three minutes for rebuttal. Just watch the clock. Yes, Your Honor. May it please the Court, my name is Sean Perdomo and I represent Mr. Eduardo Antonio Lopez Sanchez and his family on their petition for review. We are here today because Mr. Eduardo Antonio Lopez Sanchez fled a country where the Mara Salvatrucha operates as more than a criminal organization. It functions as a parallel state. In El Salvador, this gang holds power not just through violence, but through a system of control that rivals the authority of the formal government. In many regions, the Mara Salvatrucha enforces its own laws, collects extortion under the guise of taxes, and punishes those who defy its will, as Mr. Lopez Sanchez did. When he refused to manipulate soccer matches in their favor, he challenged not just gang members, but an alternative regime that dictates life for thousands of Salvadorans. The Salvadoran government, either unable or unwilling to control the gang, stood by as they marked him and his family for death. The power of the Mara Salvatrucha is such that they have become an entrenched force in Salvadoran society, a shadow authority the people must obey for their survival. For Mr. Lopez Sanchez, refusing their demands was seen as insubordination to this parallel state. Well, actually, that's not what the agency found. Well, Your Honor, there are four issues that we take up with the agency. You've taken up issues, but let me start with this. You've acknowledged, I think, that the standard of review that applies is that, and I'll quote it from the opening brief, to reverse the BIA finding, we must find the evidence not only supports that conclusion, but compels it. Is that the proper standard? Yes, Your Honor. Where in your argument do you actually apply that standard? I didn't see anything. Well, it was applied for the nexus standard, Your Honor, and that's reviewed by this Court for substantial evidence. And the substantial evidence in the record that supports a finding of nexus has to do with some of the statements that were not considered by the agency. And in those statements, there was a statement that the persecutors, back in August of 2021, after the petitioner had refereed a soccer game, had stated that they hate soccer referees, and they targeted him based solely on the fact that he was a soccer referee who refused to obey the authority of the gang in a rigged match. I believe that that was substantial evidence to show that compels the conclusion that the petitioner was targeted based solely on his opposition to their gang authority, and he was targeted specifically because he was a soccer referee. Well, actually, the IJ's decision doesn't read like that. Indeed, the IJ, although your brief argues that it was never addressed, the IJ specifically says, no gang member made any statement indicating the interpreted lead respondent's calls in the soccer game as an offense or challenge to the gang itself or its authority. What compelled a different conclusion? Well, what compelled a different conclusion, Your Honor, is the country conditions evidence that was not considered by the agency. None of which relates to this particular person. Is his name ever popping up in any country reports? No, Your Honor, and I think that's — So you're telling me that the gang is powerful there, and I don't quarrel with that. But we're talking about individuals, and what evidence compels a conclusion contrary to the finding of the agency? Well, asylum and withholding of removal doesn't just protect individuals. It protects groups of people, and what he is asserting is that he belongs to a particular social group of people. And the IJ found that the threats to him were not motivated by a perception that he was challenging the gang's authority. What compels a different conclusion? Well, what compels a different conclusion is that the gang specifically targeted him. And although they — They may have targeted him because his calls caused them to lose a bet. The IJ found it to be a matter of personal animus. That's not the same as challenging the gang's authority. Your whole argument appears to hang on the premise that he was challenging the gang's authority. That's not what the IJ found. What evidence compels a different finding? Well, the statements that were made by the gang members that they hate soccer referees, and in the larger context — Did they kill or threaten every soccer referee, only the ones that didn't make the calls they wanted? That's correct, Your Honor, and that's why this particular social group is particular, because it's defined by discrete boundaries. Not every soccer referee is targeted, only those who oppose the gang's authority. But you've got the same problem, because there's nothing that links what he did to a challenge to the gang's authority, according to the finding of the IJ, and you haven't given me any reference to evidence that compels a different finding. Your Honor, I believe this also goes to the immutability of this particular social group. Stop. Right there. Because if you don't have a nexus, the immutability and the cognizability of the particular social group really doesn't matter. If you lose on nexus, that's it. So changing subjects to go to the particular social group is not going to get you over the problem of not being able to compel or produce evidence that compels a different finding. Your Honor, some of the substantial evidence that applies to the particular social group also shows why he was a soccer referee in the first place. When you look at the beliefs that he had and why he became a member of this association of soccer referees, it was to keep children out of the reach of gangs. That was not mentioned by the agency at all. But there's no evidence to suggest the gang was targeting him because of that. Well, I believe that the reason why he is a soccer referee is because he is known to be a fair and impartial person that is trying to help out his community and the children that live there. I get you want to shift the attention to him, but the question here is the motivation of the people who threatened him. And the finding of the IJ is it was based on personal animus, and you still, and I'll stop asking this question because I've kind of beaten a dead horse, you still haven't pointed to anything that compels a different finding. Well, Your Honor, under the recent case of Corpino Romero, this court has acknowledged the standard for nexus, and that is that if there is a but-for cause for the persecutors targeting the petitioner, and here the but-for cause is his particular social group of soccer referees who refuse to obey the gang's authority, and that is not merely incidental or tangential, then you can't satisfy the one central nexus standard for asylum and withholding. Let me bring up a different, I think, difficulty with your position. How is this proposed particular social group cognizable? What is it about referees that have been set apart in a socially distinct way in the community? Well, I believe you have to do the analysis, Your Honor, and under that analysis, if you look at the immutability factor, he is joined by a voluntary association of soccer referees. It's in the country conditions evidence. It's in the record, and it shows that he is a member. But that's an association. I mean, do you have authority for the proposition that some association is necessarily a PSG? Yes, Your Honor. The case is Hernandez-Montiel v. INS 225F.3D 1084-1092-93, and that states that united by a voluntary association or by an innate characteristic that is so fundamental to the identities and consciences of its members, the members either cannot or should not be required to change. But why is that immutable? I mean, you know, people ask me to referee my son's soccer games all the time. People can choose to be a referee or not. What makes that an immutable characteristic? Well, Your Honor, just like here in the United States, people become coaches because they want to be mentors for young juveniles, and they want to keep them out of the life of crime. There are many community service organizations that do this work. But that doesn't make it an immutable characteristic, something that the society has set apart. Or I guess to echo Judge Clifton's colloquy with you, why does the evidence compel the conclusion that this particular social group is socially distinct and immutable for purposes of asylum? Well, it's socially distinct because he belongs to this association of soccer referees. He took up work with this organization to steer children out of the life of crime, which he's done. The gang recognizes this. That's why it is so important for the gang to target referees so that they can diminish his standing in the community. Also, he was challenged in many different areas where he had refereed. He had traveled to many countries. His group was particular in the sense that he couldn't give up being a referee because there weren't enough referees to go around in the country of El Salvador. He traveled for two hours. He trained for over 10 years doing this. He received an association card. This is cases very much like Plancarte Sauceda, where he has special skills and training, and that is precisely why he was targeted by the gang. Just like the nurse in Plancarte Sauceda, who refused to work on behalf of the cartels. She was targeted because she— What evidence do you have to support that proposition? That's why it was targeted by the gang. The only evidence I've seen has to do with the threats because he made calls the particular gang members there didn't like. What evidence compels the conclusion that it has some broader social implications? Because the Mara Salvatrucha exerts control over the entire society. And like any other totalitarian regime, they try and control the media. They try and control sports. That's why you've seen journalists targeted. That's why now you're seeing a soccer referee targeted. And that is what gives the larger context as to why he was targeted by the gang. And I understand that the immigration judge decided something differently, but it was a rather short opinion, and she hinged it merely on personal animus without an explanation as to why there was some sort of a disagreement, I guess, between the gang member and him that was on a personal level. They persecuted his family after he had fled to the United States, and two of his uncles were disappeared. Well, wait a minute. Persecuted his family. Is there any evidence that his dependents involved in this case actually received any threats? They did not actually receive any threats. Is there any evidence that links the disappearance of, I think it was his wife's uncle or two uncles, to the episode we're talking about here? Yes, Your Honor. There is documented evidence in the record, and it's letters from his family. Well, yes, but what demonstrates that, in fact, the motivation of the gang is what you're describing here? I didn't see any evidence that spoke to that. I'm sorry. I didn't understand the question, Your Honor. I don't quarrel with the proposition the uncles were disappeared and taken by the gang, but that doesn't link it to this vendetta against soccer referees or against the alleged vendetta against the particular petitioner here. I saw no evidence that made that link. Thank you for clarifying, Your Honor. The petitioner's family also filed their own individual asylum applications, and their particular social group is familial relations. So that is how that is relevant to their cases. My question didn't have to do with what they filed. My question had to do with what evidence links the disappearance of the uncles to the episodes here. It is linked in the country, I'm sorry, in the record on review here. And is there anything in the record you can point me to? Yes, and that's at CAR 199. Two uncles, Efrain and Abraham, disappeared after gang members went looking for him. There's also documents. Okay. Who is that from? That is from one of the letters of support that he received from his family members and neighbors. So that's the speculation by the family as to the causation. What evidence is there of the causation other than the speculation of Petitioner and his family? Well, I believe this Court reviews the findings of fact that are made by the administrative agency and take those to be true unless there's an adverse credibility finding or unless they were given diminished weight by the immigration judge. Facts, yes. Speculation is the motivation, no. That's very different. Yes, Your Honor. But nonetheless, they weren't challenged by the immigration judge. They weren't challenged by the BIA. And nonetheless, in the record here, it was accepted as true. So as I understand it, the petitioners each, both husband and wife, testified that the uncles were disappeared after gang members were searching for them, is that? That's correct, Your Honor. And you're saying so the IJ did not challenge that and nor did the government? No, they did not challenge the actual underlying reasons, no. The IJ deemed that testimony incredible, correct? Yes, Your Honor. I understand that you were hoping to reserve three minutes for rebuttal, so we'll go ahead and give that to you. We ask you a lot of questions.  Thank you, Your Honor. You're welcome. Good morning, Your Honors. May it please the Court, Tatiana Pino for the Attorney General. The Court can and should deny the asylum and withholding aspects of this petition for review because setting aside the cognizability of any particular social groups, substantial evidence supports the agency's dispositive finding that petitioners fail to demonstrate any degree of nexus to any protected ground. Thus, the Court can and should deny the petition for review solely for lack of nexus. There is no record evidence that compels reversal of the agency's reasonable finding that the alleged persecutors in El Salvador were or would be motivated exclusively by purely personal animus and retribution, which are not protected grounds. Ms. Pino, can I ask, what about the joint petition by the mother, by Ana and her son, Eduardo, and their particular social group of immediate family members of lead petitioner? Why isn't there evidence to support nexus on that basis, in your view? Yes, so there's no nexus on that basis because there's absolutely no evidence that anyone who threatened petitioner or anyone whom he fears holds any animus toward Ana or Eduardo, the son, or any of his immediate relatives. In fact— But why—I guess here's my question. Why would animus displace targeting the two of them because they're family members to the father? The animus is critical. There has to be animus against the immediate family. And in this— Well, if the persecution would be based on family relationship, it would be animus towards the lead petitioner, but then targeting of his family members based on their family status, right? I mean, I don't think that they would need to show—I mean, that's kind of the whole point, that it would not be targeting them because of personal animus towards Ana and Eduardo, but based on their familial relationship. What's the question? In other words, if they have—if—suppose the gang members have animus toward the father, and they go and commit violence against the mother and son, and the mother and son are claiming the protected social group of familial status, why would that not be the grounds for an asylum claim? I see. So this Court's decision in Rodriguez-Zuniga directly answers this question, and that was briefed in Respondent's Brief. And that's because—so under the facts here, the theory is the family would be targeted as means to leverage harm against the petitioner. In Rodriguez-Zuniga, this Court has made clear that when the motivation is means to achieve a non-protected ground, here, the retribution against the petitioner for personal reasons, that is not enough to establish nexus. But that was about—remind me, was that about a robbery or a crime motivated?  But here you have a different situation where if—let's say you're right and it's a means to harm late petitioner or the father. If they are targeting the mother and son because they are family relations, isn't that direct evidence of their PSG, which is a protected ground? Let's assume it's cognizable for a moment. Why wouldn't that be direct evidence of nexus? Because, again, Rodriguez-Zuniga makes very clear there must be evidence of animus against the family. In Rodriguez-Zuniga, I believe it was petitioner's son who was threatened to obtain money from his mother, the lead petitioner. So very analogous facts. We have a relative who was threatened to achieve a non-protected ground, which is obtain money through that means. And so the court made very clear there has to be some, and the court uses the word, actual motivation that intrinsically motivates the persecutor because there is animus toward the protected ground. A protected ground is not an actual motivation where, as here, the protected ground is simply an instrumentality, and the court uses that phrase, instrumentality, for the persecutor to accomplish his non-protected goals. Let me ask you this. Counsel just mentioned Corpino Romero, which I'm familiar with. There are situations where there could be dual motives, and our cases have frequently discussed the potential error if the agency decides that there's only one motive to the exclusion of another one. Even if one of the motives might have been something that's not protected, if there's another protected ground, such as nexus to a family relationship, doesn't the agency have to consider evidence for both motives and see whether that supports an asylum or withholding claim? Yes, they do. And did the agency do so here? Yes, the agency did. And there's evidence of that because we see the immigration judge discussing the A central reasons asylum standard as well as the lower standard by Barajas Romero, the A reason, lower nexus standard for withholding of removal. Well, I know the agency cited the standard, but where did the agency analyze evidence that the mother and son were targeted on account of being immediate family members to the father? If I may grab the record, I'd love to point to you where that is. So let's look at the immigration judge's decision together so everyone's on the same page here. Okay. Page 47 and going into 48, the last sentence states, this is by the immigration judge, however, there is insufficient evidence that the gang members expressed any animus against respondents Anna and Eduardo. That is an absolute statement as to no degree of animus whatsoever toward these. It seems to me different to say that they expressed personal animus to the individuals as Anna and Eduardo. That seems to be contrary to the concept of family-based persecution. So I understand they would have to express some animus to this family, right? And it could be animus to the whole family that derives from or arises from personal animus towards one member, right? I mean, I think in a quintessential persecution case, you know, someone who maybe is a political activist and speaks out against the government and the government says we're going to persecute your entire family because of what this one person did. I think that would be quintessential family-based persecution, even if there wasn't personal animus towards every individual in the family. It would be family. The whole point is that it's family-based persecution, isn't it? Well, the whole point is they're targeting the family to harm petitioner because they dislike petitioner for purely personal reasons. So, yes, they are targeting the family. No dispute there. And, by the way, this is just a fear of future harm. The theory is, yes, the fear is that the family would be targeted, but it links back to that non-protected reason. So that's a different argument. That, to me, is different from saying there needed to be a finding of personal animus towards Ana and Eduardo. It's a different argument for me than the animus toward the reason for the family-based persecution itself has to be a protected basis is what I'm hearing you say. It can't just be because I want to get a lot of money from this family, which is not a protected basis in asylum, but rather this family is being persecuted because of their political views or something else, and then it can extend to the whole family. I think those are two different arguments. Right. And the respondent's position comes straight from Rodriguez-Zuniga, and I encourage the court to also look especially closely at footnote two of that decision, and it discusses what it means to have intrinsic motivations versus incidental or instrumentality motives. There's a distinction there that the court makes very clear, goes to great lengths to explain. And then going back to Judge Sanchez's question about mixed motives, again, Rodriguez-Zuniga deals exactly with this issue and explains that mixed motive cases are possible where persecutors are essentially motivated by a nonprotected ground, so long as there is evidence of the family membership being an actual, additional, intrinsic motivation. But whereas, as in this case, the nonprotected ground is the exclusive motivation, there cannot be a mixed motive. And you're saying the nonprotected ground is the personal animus. That's right. Let me ask you this. I'm sorry to interrupt. The uncle's kidnapping or disappearance as an evidence of nexus, as I understand it, the family had already left the country, and so there was no longer a motivation to try to leverage him for refereeing soccer games because he was no longer refereeing soccer games. But if gang members are kidnapping uncles because they were searching for this family and couldn't get that information, why is that not direct evidence of a family member, immediate family member, something related to the PSG and not this nonprotected ground, as the government suggests? Well, first, let's be very clear. The record actually doesn't state, I should say petitioner never put forth any evidence that these were the same gang members who targeted him. But petitioners did testify that there were people with tattoos and gang members that were the ones who did the kidnapping. And as we understand, the IJ credited their testimony. So there's nothing to go against that testimony, is there? No, but what I meant to say perhaps is they're not the same. These are not the same individuals. There's no evidence that these are the same individuals. So that's just my first point. My second point is that even assuming that these uncles were kidnapped and disappeared because they were seeking the whereabouts of the whole family or the immediate family plus petitioner, that is not sufficient to establish that, again, this was done out of animus toward Ana Eduardo or the lead petitioner. It's the same problem that Ana Eduardo have. And I point the court to this court's decision, Duenas-Quinto, which respondents cited in the brief, that concluded that upheld the agency's denial of asylum and withholding because substantial evidence supported that the persecutors did not target. Counsel, I'm sorry. I don't understand that. If family members are kidnapped because the family is being searched for, how is that not, what else could it be other than animus toward the family? So perhaps we need to unpack the idea of animus, right? I think that's where we're getting stuck. So just to take a purely illustrative example, and an unfortunate one, but it's current actually, anti-Semitic people have a hatred towards the Jewish population to the point that they don't want to see the Jewish population exist on the face of the earth Okay? That is how extreme the animus has to be. And so when you're applying that same degree of animus and hatred in this context, you're looking for evidence where the gang absolutely despises and hates this particular family so much that they want to see them annihilated. That is what we're talking about. That is what it means to have the level of hatred required for asylum. That's what we look for in religious persecution cases, for example. And so there's no evidence of that here. There's no evidence, again, that these gang members knew Ennard Duardo existed, that they were related to Petitioner. So it seems that the record does not have much to go based on, but the concern that I have is the agency saying there's no evidence to Nexus related to membership in the immediate family setting. Now, I think what you're discussing is, had the agency properly considered that evidence, maybe it might not be enough or something, but it said there was no evidence of it on the notion, I guess, about leveraging refereeing or animus, and that seems to me to be incorrect as a matter of law, not as a matter of weighing evidence. So, again, I understand the court's viewpoint for this issue. It's purely the fact that the mother or his wife and son may be targeted. You're asking whether that alone is enough for animus, right? Is that correct? Animus is the government's position. My view is, if the family membership is a cognizable PSG and two uncles are kidnapped because they are looking for that family and can't find them, that seems to me to be threshold evidence that people were targeted because of membership in the PSG. Setting aside animus or anything else. Sure. So, Rodriguez-Zuniga directly counters and goes against that notion you just described, and I point the court to page 1026 of that decision, and the court made clear evidence that a gang-targeted petitioner's family is, and I quote, not necessarily evidence of the underlying motivation for doing so, end quote. Moreover, at page 1020 of the same decision, again, the court emphasizes, simply because persecutors target a family member, quote, does not transform the persecutor's motivation from, and now I'm paraphrasing, wanting to achieve the non-protective goal to, quote, actual animus against the family. So evidence that family members are targeted is insufficient to show the motivation for targeting that family. And as Judge Clifton pointed out, the persecutor's motive, what was in their mind when they targeted these persons, that is the critical element for nexus. I think possibly the difference here we're talking about is as a matter of law, it seems like the agency didn't even consider the, like, so I read Rodriguez-Zuniga as saying this type of evidence doesn't necessarily compel a finding, but I think it's still something that the agency has to consider as a matter of law. So, okay, let's go back to the immigration judge's decision here. So let's see. So as already stated, the immigration judge made clear there's insufficient evidence that the gang members held any, expressed any animus against Respondents Ana and Eduardo. The lead Respondent's fear of the gang members harming his immediate family shows only his belief, subjective belief, that the gang would harm Respondents Ana and Eduardo as a means to leverage lead Respondent into making calls in the gang's favor. I guess, Your Honor, what is it? I'm struggling to see what the Court is seeing or not seeing. Because I think the biggest concern is that there's accredited evidence that even after, you know, the lead Petitioner ceased refereeing, they were searching for him and disappeared two of his family members. So that seems to be at least, you know, arguable evidence of family-based animus that the agency seemed to not consider. I mean, it all relates back to why they want to target the petitioner in the first place. We understand your argument on that point. Thank you. If there are no further questions, Your Honors, thank you very much. Thank you. Your Honors, just to correct some statements I made earlier, the correct citations earlier referenced were incorrect. So the CAR-199 should be corrected to CAR-149 and CAR-748. And that was testimony from Ana Yamileth regarding how she learned about her uncle's disappearances. She learned it from a neighbor. I mistakenly said that it was through a letter. It seems that the record is vague as to how she learned that information, but just to make it very clear. There were a few things that were brought up. Rodriguez-Zuniga, the most recent case that was cited by the government, the non-protected goal there was to obtain extortion. Here it doesn't involve extortion and it doesn't involve recruiting someone into being a part of the gang. This is very different. This is targeting a person who is a beacon in the community, someone who is seen as possessing those qualities that would steer children out of a life of crime. He's been doing this for, at that point, about 11 years. And because he was doing that, he was targeted by the gang. What evidence is there to support the statement you just made? Thank you, Judge Clifton. I was just going to get to that. So CAR 97-99, you see a statement there made in August 2021 at the Cowleys versus Saprissa game. He was told, if you were ever to show up in one of his soccer fields, that he was not going to leave the field alive. He said it in the context of him being a soccer referee. He was targeted because of his calls on the field as a soccer referee. Now, it's very significant that he said a soccer field because this relates back to what he is doing. Also, he received threats. Let me focus here. Even if I would accept the proposition he was targeted because he was a soccer referee and not because he made calls that the gang members didn't like, what is it that makes the connection to the back story you've provided us, that it's all because he's trying to encourage youth to get engaged in healthy activities and not get involved in gang activities? Is there anything at all that makes that leap? Well, Your Honor, those findings were not made by the immigration judge, and that's why we're here today in court because the immigration judge didn't consider them, even though they were in the evidence. No, no, no, wait a minute. The immigration judge said it was personal animus. That's correct. It's your burden to show us the evidence that compels a different conclusion. I mean, the starting point is that your client has conceded removability. So now the burden is on your client to establish an entitlement to your clients, plural, to establish an entitlement to asylum. That's correct. And so to tell me that the immigration judge didn't talk about a particular argument doesn't tell me evidence compels a different conclusion. And I haven't seen anything that makes the leap to supporting youth generally by being a soccer referee in order to encourage them not to join the gang. What evidence is there that makes that leap? Well, there is evidence in the record at CAR 234 through 237 as to why the petitioner became a soccer referee. But the gang members don't know that. If they believe that anybody who was a referee opposed them, then all referees would be at risk, and there's no evidence of that. He says he's at risk because he made calls they didn't like, not because he's simply a soccer referee. Well, he made the calls because they're consistent with his ideals and his values, and that's why he undertook becoming a soccer referee. How does that differentiate him from any other soccer referee? Well, there's no evidence in the record, Your Honor, as you're pointing out, as to what happened to other referees other than his friend Eusebio who was murdered five years prior. So how does that satisfy your burden to show us evidence compelling a different conclusion? Because there was a person that was similarly situated who was murdered for defying the gangs at a soccer match, his friend Eusebio. He testified to that. That is also reflected in the evidence that was submitted to the court and was not considered. So I think those findings themselves, since they weren't made, that's why Nexus was not found in this case, and it was rather blamed on personal animus. And as it was mentioned in Corpaino-Romero, persecution is not mutually exclusive. He can be targeted because they disagreed with his calls on the field, but there was also another explanation as to why they were targeting him, and that's because he was a soccer referee and because he held these ideals and because he refused to go along with the gangs' authority. Counsel, this is an unusual case. Assume that we don't agree with you that there's a legal basis for a lead petitioner's petition but that there may have been some problems with Ana and Eduardo's petition. Where does that leave us? Does the failure of his petition affect their separate petition or no? Well, I believe that's where you see that there's a lot of flaws in the immigration judge's findings with regard to her cognizability of the particular social group analysis. As this court has pointed out several times, family-based persecution and personal animus are very hard to separate. She went through the three-prong analysis to determine whether it was not a cognizable particular social group. She decided that the family-based social group was immutable and it was particular, but somehow she decided that it was not socially distinct despite the petitioner having a public-facing job as a soccer referee. As we know in common society, we know who celebrities are and we know who their family members are. The family members themselves may not be famous and they may not be on the field attracting attention, but we certainly know who they are. The gang here was able to figure out who his family members were because they even murdered extended family members such as the two uncles. So by not analyzing all of that evidence, the immigration judge made a very flawed cognizability finding with regard to the family-based particular social group that was forwarded by his family members. There were also other flaws in the particular social group analysis with regard to lead petitioners. I was going to ask, I don't understand social distinction to require a family-based particular social group to be some kind of celebrity status or well-known in the community in that sense. Is there any BIA or Ninth Circuit decision that would support that view of how to look at a family-based particular social group? Well, Your Honor, no. It's simply are they set apart or seen as distinct by the society at large? And those factors, it does not say, as Judge Clifton asked earlier, whether or not their names are mentioned in country conditions reports. I've not seen a case in all of my years of practice in asylum law where a specific family outside of a government official or perhaps somebody that was notorious was mentioned in a State Department country condition report. This soccer referee certainly was not named in a country condition report. He's not that notorious, but he's notorious in his communities. He's known. He has notoriety in his communities. He even travels two hours throughout El Salvador refereeing soccer games. That's how well-known he is. So his family should benefit from that, and they should be seen as socially distinct because they are set apart or different from any other family in El Salvador because of the virtue of his occupation. Thank you, counsel, for your helpful arguments. This matter is submitted.
judges: CLIFTON, SUNG, SANCHEZ